CADY (MATTOX v.). See Case No. 9,301.

---

## Case No. 2,284.

### CADY v. PHOENIX FIRE INS. CO.

[18 Int. Rev. Rec. 30; 5 Chi. Leg. News, 462.] [1]

Circuit Court, D. Rhode Island. June 12, 1873.

NEW TRIAL—VERDICT AGAINST EVIDENCE — FOLLOWING STATE PRACTICE.

1. A new trial is ordered in this case, on the ground that the jury rendering their verdict "must have fallen into some important mistake, or must have departed from some rule of law, or have made deductions from the evidence which are plainly not warranted by it."

2. The question as to whether the act of congress of June 1, 1872 [17 Stat. 197], to secure uniformity of practice in the federal and state courts, does not entitle a party against whom a verdict is rendered on a suit at common law in the circuit court to a second trial on filing a written motion therefor, within forty-eight hours after the rendition of the verdict, in accordance with the practice of the supreme court of Rhode Island, is touched upon but not decided.

[At law. Action by Resolved W. Cady upon a policy of fire insurance. There was a verdict for plaintiff, and the defendant now moves for a new trial.]

C. S. Bradley and J. H. Stiness, for petitioners.

S. Currey, A. Payne, and J. C. Pegram, for respondent.

KNOWLES, District Judge. The defendant company, against whom a verdict was rendered on the 10th of March, now moves that that verdict be set aside and a new trial granted, upon four distinct grounds,—one of these, that the verdict was against the evidence and the weight thereof. For a reason that will be apparent, of this ground for the motion I shall first treat.

Of a court's rights and duties, in disposing of a motion for a new trial, when claimed upon this ground, I had occasion fully to treat in the case of Hunt v. Pooke [Case No. 6,895]. Such a motion, I held, was addressed to the discretion of the court, remarking, in conclusion, that, in my judgment, "it was no abuse of that discretion on the part of the Pennsylvania jurist who, on the return of a verdict by a jury, on the instant exclaimed: 'Mr. Clerk, enter an order that that verdict be set aside. I wish it to be understood that in my court it requires a verdict from thirteen to rob a banking corporation.'" Nor was it, in my judgment, any abuse of that discretion on the part of our own Justice Curtis,

when, at Newport, a motion for a new trial on the ground that the verdict was against evidence being tendered him by a very able and very pertinacious member of the bar, he, without a moment's hesitation, said: "You can file your motion, Mr. C., but I overrule it now and at once, for I heard the case tried, and am satisfied with the verdict." To the views then expressed I still adhere, and would here refer, as embodying the principles or rules which should guide me in passing upon the motion under consideration. These I found in the concurring rulings or declarations of Justice Story and Justice Curtis, the first saying, in 1 Sumn. 471 [Alsop v. Commercial Ins. Co., Case No. 262]: "I hold it to be my duty to abstain from interfering with the verdict of a jury unless the verdict is clearly against the undoubted general current of the evidence, so that the court can clearly see that they have acted under some mistake or from some improper motive, bias, or feeling;" and Justice Curtis saying, in 1 Curt. 64 [Wilkinson v. Greely, Case No. 17,671]: "I hold it to be my duty not to interfere with the verdict of a jury as being against the evidence, unless I can clearly see that the jury must have unconsciously fallen into some mistake, or been actuated by some improper motive, in rendering the verdict;" and again saying, in 2 Curt. 16 [Palmer v. Fiske, Case No. 10,691]: "Now, what I have to determine upon this motion is whether I can clearly see that the jury must have fallen into some important mistake, or must have departed from some rule of law, or have made deductions from the evidence, which are plainly not warranted by it." Now, recognizing as sound the rule of conduct deducible from the utterances of Justices Story and Curtis, not to say prescribed by them, I, without any hesitancy, adjudge that, upon the ground stated, the verdict in question should be set aside and a new trial granted. I cannot but clearly see that the jury must have fallen into some important mistake, or must have departed from some rule of law, or have made deductions from the evidence which are plainly not warranted by it, and consequently cannot but sustain the motion.

And here I might, without violence to precedent or usage, indulge in an argumentative review of the whole case, involving a recapitulation of more or less of the testimony given by some forty or fifty witnesses, and incidentally a repetition, in substance, of the arguments of the learned counsel, with remarks approbatory or otherwise; but from this I refrain, as clearly in this case a work of supererogation, not to say an injustice to one or the other of the parties, neither of whom, in my judgment, is entitled to an argument in his favor from the bench upon the facts of the case, at any stage of the cause.

Sustaining the motion upon the ground above stated, I might, without impropriety,

---

[1] [5 Chi. Leg. News, 462, contains only a partial report.]

decline considering or passing upon the remaining three grounds. As, however, I have in fact given them due consideration, I will, in as few words as possible, state my conclusions in regard to them.

As a second ground for the motion, it was alleged that, while the case was pending before the jury, one John L. Ross, a friend and agent of the plaintiff, was seen conversing with a juror, and that said Ross, on being questioned by the counsel of the defendant concerning that conversation, admitted that it was about this case, and that he had conversed with others of the jury, asserting that he had a right so to converse, if he did not attempt to influence the verdict. · Of this ground it seems sufficient to say that in view of all the evidence adduced, including the affidavits of Ross himself and of the juror with whom the conversation was held, each of whom explicitly denied that the conversation between them had any relation to the case on trial, it must be held that the allegation of illegal interference with the jury was not sustained by the proofs. In regard to the law in this particular, no question was raised at the bar. It was agreed to be as declared by the supreme court of Massachusetts (13 Mass. 220), thus: "Too much care and precaution cannot be used to preserve the purity of jury trials. It is not necessary to show that the mind of a juror tampered with was influenced in fact. If it was, there is sufficient cause to set aside the verdict; and if it was not, and the party who has gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes, and every one ought to know that for any, even the least, intermeddling with jurors, a verdict will always be set aside." See, also, 5 R. I. 561, where the supreme court of Rhode Island says: "The slightest tampering with a jury during the trial, or, prior to it, by a party, or the agent of a party, in whose favor a verdict has been rendered, is, on grounds of public policy, a good cause to set it aside, without regard to the success of such an attempt to poison the course of justice."

The third ground for the motion was (as understood by the court) that the instructions to the jury in the charge by the court were, in some particular or particulars, unaccordant with what the defendant's counsel understood the court, at an early stage of the trial, to intimate its instructions would be; whence it resulted, as is alleged, that his argument to the jury was less pointed and less effective as to certain points than it might have been had he been preadvised of the exact terms and phrases of the charge. Overruling this, as a ground for a new trial, it seems sufficient to say, in explanation or vindication—Firstly, that this matter should have been made a subject of complaint, or of a request, to the court, before the jury retired, when, it is to be supposed, the court would have permitted a supplemental argument, had right and justice demanded it, or have so phrased its instructions as to preclude all cause for complaint; and, secondly, that, upon inquiry and examination, the court fails to see such a discrepancy between its intimations (as reported by the stenographer) and its instructions as read to the jury as, it is alleged, is justly predicable of them. As the court reads its instructions, ignoring none of the qualifying clauses, and discriminating between instructions and remarks intended to be illustrative merely, it also fails to see wherein the argument of the learned counsel could with advantage have been essentially modified had he had the whole of the court's charge in hand, in print, while addressing the jury.

Upon the fourth and last ground set forth for a new trial, I decline in this connection, and on this occasion judicially to rule. The question presented is equally novel and important, and, being one which it is safe to predict will, as soon as it may, be submitted to the supreme court, is one upon which a district judge merely should hesitate to pass without, at least, a conference thereupon with his superior of the circuit court, whose seat he chances temporarily to occupy. The question arising is, in brief, this: Is a party to a suit at common law in the circuit court, against whom a verdict is rendered, entitled, as of course, to a new (second) trial, on filing a written motion therefor within forty-eight hours after the rendition of the verdict, as he is in the supreme court of Rhode Island? (Gen. St. 488.) The defendant company in this case filed its motion within the period named, and now claims that it is entitled to a new trial, and, of course, basing its claim upon the 5th section of an act of congress of June 1, 1872 [17 Stat. 197], in these words: "Sec. 5. That the practice, pleadings, and forms and modes of proceeding in other than equity and admiralty causes in the circuit and district courts of the United States, shall conform, as near as may be, to the practice, pleadings, and forms and modes of proceeding existing at the time on like causes in the courts of record of the state within which such circuit or district courts are held, any rule of the court to the contrary notwithstanding: provided, however, that nothing herein contained shall alter the rules of evidence under the laws of the United States, and as practiced in the courts thereof." 17 Stat. 197. It is not questioned at the bar that under this act "the modes of proceeding" in the federal courts in this district must hereafter be more accordant with those of the state courts, than they heretofore have been under the pre-existing statutes of congress bearing upon the subject. Under these, "the forms and modes of proceeding" in suits at common law in the federal courts were re-

quired to be the same as those used in the state courts in September, 1789, "subject, however to such alterations and additions as the said courts respectively shall in their discretion deem expedient, or to such regulations as the supreme court of the United States shall think proper from time to time by rule to prescribe to any circuit or district court concerning the same." 1 Stat. 93; Id. 276. And though such were the requirements of the law, and though in the Rhode Island courts, in 1789, and since, parties litigant have always been entitled, under state statutes, to a second trial (and for a long period to a third) as of course, it is a fact, nevertheless, that in the federal courts in this district a second trial has never been granted, or, so far as is known, ever claimed, unless for a cause recognized as sufficient, in view of common-law principles and practice.

The new statute (section 5, above quoted), it is seen, while it contains the phrase, "forms and modes of proceeding," found in prior statutes, prefixes to that the words "practice" and "pleadings;" and hereupon arises the question discussed at the bar, whether under this section, requiring on the part of the federal courts conformity, as near as may be to the practice, pleadings, and forms and modes of proceeding in the courts of record of the state, a party is entitled, as of course, to a second jury trial. Rulings and dicta bearing more or less directly on the point, of five of my brethren of the district courts, have been brought to my notice, viz.: Judge Longyear's of Michigan, 5 Chi. Leg. News, 289 [Hiller v. Shattuck, Case No. 6,504]; [2] Judge Sherman's of Ohio, 5 Chi. Leg. News, 146 [Butler v. Young, Case No. 2,245]; Judge Hopkins' of Wisconsin, 5 Chi. Leg. News, 97 [Republic Ins. Co. v. Williams, Case No. 11,707]; [2] Judge Hall's of the northern district of New York, 7 N. B. R. 395 [Safe Deposit & Sav. Inst., Case No. 12,211]; [2] and Judge Blatchford s of the southern district of New York, 7 N. B. R. 551 [In re Dole. Case No. 3,965]; [2] and, since the hearing before me, a communication has reached me from the respondents to the motion, directing attention to the seventh amendment to the constitution of the United States, as virtually prohibiting a re-examination of the cause once tried by a jury, otherwise than according to the rules of the common law.

Of these rulings and dicta it seems sufficient here to say that those of Judges Hopkins, Hall, and Blatchford seem to accord with the views of the supporters of the motion, and those of Judges Longyear and Sherman with the views of its opposers; and, of the seventh amendment of the constitution, to say that even to a cursory reader it cannot but suggest a line of argument likely to lead an inquirer to the conclusion that the word "practice," contained in the section of the law above quoted, cannot be judicially construed to warrant a second trial of a jury cause, as of course, in a federal court, though, by a statute of Rhode Island, a right to such trial is secured to litigants in her courts.

The question I add in closing is one that can be raised anew at any time on the rendition of a verdict by a jury, and which, it is to be hoped, will be raised in the course of the coming term, when the learned judge, whose right it is, can declare and settle for this circuit the judicial construction of the section quoted, which, by the way, it is not unreasonable to believe its author intended should produce a uniformity of "practice," in the fullest sense of the phrase, in the federal and the state courts, in all common-law cases.

A new trial is allowed and ordered on the ground first stated,—that the verdict of the jury was against the evidence.